UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SHIRLEY MARTIN,                           )
                                          )
        Plaintiff,                        )    Civil Action No. 3:20-CV-254-CHB-CHL
                                          )
v.                                        )
                                          )    **MEMORANDUM OPINION AND**
COMMISSIONER OF SOCIAL                    )    **ORDER ON OBJECTIONS TO**
SECURITY,                                 )    **MAGISTRATE JUDGE'S REPORT**
                                          )    **AND RECOMMENDATION**
        Defendant.                        )


                        ***   ***   ***   ***


        Plaintiff Shirley Martin filed this action seeking review of the decision by Defendant

Commissioner of Social Security to deny Martin's application for supplemental security income,

as well as disability and disability insurance benefits. [R. 1] Plaintiff submitted her Fact and Law

Summary on December 18, 2020 [R. 17], and Commissioner submitted his Fact and Law

Summary on January 18, 2021 [R. 18]. Magistrate Judge Lindsay issued a Report and

Recommendation on July 7, 2021 [R. 19], followed by a Corrected Report and Recommendation

on July 15, 2021 [R. 21], recommending that the Commissioner's decision be affirmed. [R. 21]

This matter is before the Court on Plaintiff's Objections to the Report and Recommendation. [R.

24] For the reasons laid out below, the Court will sustain Plaintiff's Objections in part and

remand the case back to the Commissioner.

I.      **Background Facts**

        Magistrate Judge Lindsay's Corrected Report and Recommendation ably sets out the full

factual background of this case. [R. 21] Briefly, Plaintiff seeks review of an Administrative Law

Judge's ("ALJ's") unfavorable decision regarding her application for supplemental security

income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II.

[R. 21, p. 3; R. 15 (Administrative Record), p. 14, 104–05] The ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)–(e); 20 C.F.R. § 416.920; *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). At step one, the ALJ determined that Martin had not engaged in substantial gainful activity since January 1, 2017. [R. 15, p. 17] At step two, the ALJ determined that Plaintiff has severe impairments of degenerative joint disease, left knee; degenerative disc disease, lumbar spine; venous insufficiency, bilateral lower extremities, status-post left lower extremity venous ablation; fibromyalgia; osteoarthritis, right shoulder; and obesity. *Id.* at 17–18. At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments. *Id.* at 18–19. The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with the following limitations:

> lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. The claimant can stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. She can occasionally climb ramps or stairs, but she can never climb ladders, ropes or scaffolds. She can frequently balance and she can occasionally stoop, kneel, or crouch; but she can never crawl.

*Id.* at 19–24. At step four, the ALJ determined that Plaintiff had no past relevant work. *Id.* at 24. At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform, including Cashier, Office Helper, and Benchwork/Assembly. *Id.* The ALJ consequently concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision. *Id.* at 25. The Appeals Council denied Plaintiff's request for review. *Id.* at 5–7. Plaintiff filed this action challenging the Commissioner's denial of her benefits. [R. 1] The Court referred the matter to Magistrate Judge Lindsay, who recommended that the Commissioner's decision be affirmed. [R. 21]

## II.     Standard of Review

When a party objects to a report and recommendation, the Court reviews *de novo* only those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C).  The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Judge Lindsay's Recommendation to which Plaintiff objects to determine whether relief is warranted.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability, the ALJ conducts a five-step analysis:

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.
2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . .
3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of RFC. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008).

## III.  Discussion

In her Objections to the Report and Recommendation, Plaintiff argues that the Court should not adopt Judge Lindsay's analysis for several reasons. Plaintiff made the following objections: First, the ALJ conflated Step 3 and Step 4 for Plaintiff's obesity. [R. 24, p. 2] Second, the ALJ did not look at how Plaintiff's obesity would affect each of her specific impairments—particularly in light of the fact that Plaintiff has extreme obesity (BMI of 58.4). *Id.* at 3–4. Third, the finding that fibromyalgia is not a disabling limitation in the residual functional capacity analysis is not supported by substantial evidence. *Id.* at 4–8. Fourth, the finding that Plaintiff's left knee impairment is not a disabling limitation in the residual functional capacity analysis is not supported by substantial evidence. *Id.* at 9–10. Fifth, the ALJ disregarded evidence that Plaintiff's condition was not improving as quickly as she hoped. *Id.* at 10–12. Sixth, the ALJ failed to properly explain why she was assigning "little weight" to treating physician opinions that Plaintiff could never climb stairs and could only stand/walk for less than 2 hours in a

workday. *Id.* at 11–12. Seventh, the ALJ improperly constructed the hypothetical question to the vocational expert because she did not specify that certain tasks take longer for Plaintiff. *Id.* at 12–13. Because the objection is dispositive, the Court will only consider Plaintiff's sixth objection: the ALJ failed to properly explain why she was assigning "little weight" to treating physician opinions. *Id.* at 11–12.

A.   *Treating Source Rule*

The treating source rule prescribes a specific process the ALJ must go through to discount the opinion of a treating physician. As the Sixth Circuit has explained,

> If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ has a "clear duty" to "give good reasons" for determining how much weight to give to a treating physician's opinion, which "must be 'supported by the evidence in the case record, and . . . sufficiently specific to make clear to any subsequent reviewers . . . the reasons for that weight.'" *Cole*, 661 F.3d at 937 (quoting SSR 96-2P, 1996 WL 374188 (July 2, 1996)).

> However, a violation of the good reasons rule can be deemed to be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation."

*Id.* at 940 (alteration in original) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).

The Sixth Circuit has clarified that it is a "'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'" *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020) (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007). An ALJ does not meet the goals of § 1527(d)(2) if she "leaves this Court without a clear understanding of why the ALJ credited [or discredited the treating source] opinion. *Cole*, 661 F.3d at 940. An "ALJ's failure to provide any reasons for ignoring [a treating source] opinion is reversible error" and does not meet the goals of § 1527(d)(2). *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 499 (6th Cir. 2019); *see also Bowen*, 478 F.3d at 750 ("[I]nvoking the harmless-error exception here—where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion— plainly risks having the exception swallow up the rule."). Further, "a reason . . . that relies on a mischaracterization of the record cannot be a good reason [for disregarding a treating source's opinion]." *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 223 (W.D.N.Y. 2018) (alterations in original) (quoting *Wilson v. Colvin*, 213 F. Supp. 3d 478, 485 (W.D.N.Y. 2016)).

B.     *Key and Tarter*

Plaintiff's objection stems from evaluations by two physicians at Danville Orthopaedics & Sports Medicine, Dr. Charles C. Key and Dr. Jeremy W. Tarter. Drs. Key and Tarter saw Plaintiff three times in early 2017 for issues with her shoulder and knee. On January 4, 2017, Dr. Key first saw Plaintiff for pain in her left knee. [R. 15, pp. 426–27] He examined Plaintiff and took x-rays of her knee, diagnosing her with "moderately severe left knee osteoarthritis." *Id.* Dr. Key concluded that "ultimately a knee replacement surgery will be her best chance at pain-free function of the left knee" but recommended against it because of her age and obesity. *Id.* at 426.

He referred her to Dr. Tarter for a second opinion. *Id.* On January 9, 2017, Dr. Key saw Plaintiff again for pain in her shoulder. *Id.* at 424-25. He examined her and took an x-ray, ultimately recommending physical therapy. *Id.* On January 24, 2017, Dr. Tarter saw Plaintiff on referral. *Id.* at 423. He examined Plaintiff and reviewed her x-rays. *Id.* He concluded that Plaintiff "has moderate osteoarthritis with peripheral osteophytes that are arthritic," as well as "pretty advanced patellofemoral disease although clearly this can be projectional." *Id.* Dr. Tarter noted that Plaintiff "works as a bus monitor and going up and down stairs is a real issue and will continue to be so. Thus I do believe this problem will continue to affect her employability long-term." *Id.*

After these visits, on May 1, 2017, Drs. Key and Tarter filled out a "Medical Source Statement of Ability to Do Work-Related Activities," which assessed Plaintiff's ability to perform a variety of functions. *Id.* at 498–501. Two items on that form are relevant here. First, the form asks: "How often can the individual perform the following POSTURAL activities?" *Id.* at 499. For "Climbing – ramps/stairs/ladder/rope/scaffold," Drs. Key and Tarter checked the "Never" box. *Id.* Second, in answer to the question, "[H]ow many hours total (with normal breaks) can the individual stand and/or walk?" Drs. Key and Tarter checked the "less than 2 hours in an 8-hour workday" box. *Id.* at 498.

The ALJ discounted the opinions of Drs. Tarter and Key. Her analysis, in full, states:

> The undersigned notes the claimant's treating orthopedic surgeon Jeremy Tarter, M.D., stated in January 2017 that, the claimant's left knee problem would affect her employability long-term (Exhibit 4F/1). However, opinions regarding the claimant's ability to work are reserved to the Commissioner, and as such are not entitled to any special significant weight (20 CFR 404.1527(d) and 20 CFR 416.1527(d)).

> Then in May 2017, Dr. Tarter and fellow *examining* orthopedic surgeon Charles Key, M.D. cosigned a medical source statement indicating the claimant could lift and/or carry less than ten pounds occasionally and/or frequently; could stand less than two hours in an eight-hour workday; had push/pull limitations;

required the need to alternate between sitting and standing; had manipulative limitations; but no environmental limitations (Exhibit 9F). Drs. Tarter and Key's opinions are not supported by the record. While objective imaging and clinical findings showed some abnormalities, their opinion that the claimant cannot stand more than two hours per day is inconsistent with her activities of daily living. For example, the claimant reported that she worked approximately four hours per day as a bus monitor, which reasonably requires standing more than two hours at one time. In addition, their opinions that the claimant had manipulative and push/pull limitations is inconsistent with her testimony that she has no problem using her right upper extremity. Thus, Drs. Tarter and Key's medical source statement is afforded little weight.

*Id.* at 23 (emphasis added).

In the Report and Recommendation, Judge Lindsay found that the ALJ made several errors with respect to the treating source analysis on Drs. Key and Tarter. Judge Lindsay noted that the ALJ at one point refers to both Dr. Key and Dr. Tarter[1] as "examining orthopedic surgeon[s]" and not treating physicians, that the ALJ "does not address how Dr. Key's and Dr. Tarter's status as treating sources affected the analysis or extensively discuss by name any of the § 404.1527(c) and § 416.927(c) factors," and that the ALJ discussed only two of the seven required factors pursuant to §§ 404.1527(c) and 416.927(c). [R. 21, pp. 23–24] Nevertheless, Judge Lindsay found that these errors were harmless because the ALJ had "met the goal of the procedural safeguard of providing good reasons." *Id.* at 24 (quoting *Thaxton*, 815 F. App'x at 960). Judge Lindsay found that the "decision still provides 'sufficient reasons for giving less weight to treating-source opinions'" because the ALJ provided specific reasons for affording Drs. Key and Tarter's statements little weight, including the improvement in the condition of her right shoulder and Plaintiff's testimony about the requirements of her bus monitor job.[2] *Id.* at 25–26 (quoting *Thaxton*, 815 F. App'x at 960).

---

[1] At another point the ALJ refers to Dr. Tarter as Martin's "treating orthopedic surgeon." [R. 15, p. 23]
[2] Judge Lindsay also noted that the Key and Tarter opinion was made through checking a box on a form, although the ALJ fails to raise this issue in her analysis of Drs. Tarter and Key. [R. 24, p. 26; R. 15, p. 23]

In her Objections, Plaintiff argues that the ALJ's analysis of Drs. Key and Tarter's opinions was not harmless because the ALJ did not provide good reasons for affording the opinions little weight. [R. 24, pp. 11–12] Plaintiff asserts that the ALJ did not address Plaintiff's stair-climbing limitation at all, so the ALJ cannot have provided good reasons for discounting this opinion. *Id.* at 12. Plaintiff further asserts that her testimony on her bus monitor job did not actually conflict with the 2-hour standing limitation of Drs. Key and Tarter because the job had a six-hour break between shifts and included mostly sitting. [*Id.*; R. 15, pp. 53–54] Plaintiff also argues that, even if the ALJ was entitled to reject Dr. Tarter's opinion on her employability, the ALJ was not entitled to disregard the underlying basis for that opinion—namely, that "going up and down stairs is a real issue and will continue to be so." [R. 24, p. 12; R. 15, p. 423]; *see also* [R. 15, p. 499 (opinion of both Drs. Tarter and Key that Plaintiff can "never" climb stairs)]

Considering the requirements for finding harmless error in violating the treating source rule, as well as the evidence in the record, the Court agrees with Plaintiff that the ALJ's errors in failing to evaluate Drs. Key and Tarter's opinions are not harmless. It is clear that Drs. Key and Tarter's opinions are not patently deficient, nor did the ALJ make findings consistent with the doctors' opinion. Further, the ALJ's analysis did not meet the goals of § 1527(d)(2). *See Cole*, 661 F.3d at 940. Though the ALJ gave specific reasons for concluding that their opinions were "not supported by the record," those reasons misconstrued the record and also addressed only *some* aspects of Drs. Key and Tarter's opinions. [R. 15, p. 23].

Specifically, the ALJ does not give reasons why Dr. Tarter's January 24, 2017 opinion that "going up and down stairs is a real issue," [*Id.* at 423], and both doctors' opinion that Plaintiff can never climb stairs should be discounted. *Id.* at 499. The ALJ's only mention of Plaintiff's issues climbing stairs comes in a different section of her opinion, where the ALJ notes that Plaintiff's work as a bus monitor, which includes climbing stairs on a bus, is inconsistent

with Plaintiff's allegations of disabling symptoms. *Id.* at 22. The ALJ notes that she cannot accept Dr. Tarter's opinions on Plaintiff's employability, but the Court simply cannot tell how and why the ALJ's opinions regarding Plaintiff's ability to climb stairs is only afforded little weight. *See Cole*, 661 F.3d at 940; *Wilson*, 783 F. App'x at 499 (finding error not harmless where the ALJ discredited one opinion of a treating physician but did not address a different opinion from that physician); *Williams ex rel. T.D.B. v. Soc. Sec. Admin.*, No. 3:19-CV-00064, 2020 WL 1161975, at *7 (M.D. Tenn. Feb. 14, 2020), *report and recommendation adopted sub nom. Williams v. Soc. Sec. Admin.*, No. 3:19-CV-00064, 2020 WL 1158141 (M.D. Tenn. Mar. 10, 2020) (same).

Further, the purported inconsistencies in the record cited by the ALJ are not inconsistent with the doctors' conclusions. In *Wilson*, the ALJ discounted a medical opinion in a questionnaire filled out by the claimant's treating psychologist, which asserted that there were significant limitations in functioning, because the claimant testified that he enjoyed "mentally stimulating puzzles." *Wilson*, 213 F. Supp. 3d at 484. The reviewing court found that the ALJ erred by mischaracterizing the claimant's abilities—since the record showed the claimant could only do puzzles for 15 minutes before getting frustrated—and remanded the case back to the Commissioner based on the ALJ's failure to give good reasons for not affording controlling weight to treating source opinions. *Id.* at 484–91; *see also Roden v. Comm'r of Soc. Sec.*, 389 F. Supp. 3d 548, 553–54 (S.D. Ohio 2019) (finding error and remanding where ALJ found a treating physician's opinion to be inconsistent with the claimant's reported symptoms, when the record showed that the opinion and the symptoms did not conflict).

This case is like *Wilson* and *Roden*. The ALJ asserts that the doctors' opinion on Plaintiff's ability to stand is inconsistent with the record because of Plaintiff's job as a bus monitor, which "reasonably requires standing more than two hours at one time." [R. 15, p. 23]

But there is no evidence in the record to indicate that Plaintiff stands for more than two hours in an eight-hour span; instead, Plaintiff testified that she sits for most of her two-hour shifts as a bus monitor, and she has a 6-hour break between her two shifts (so that her total standing time was stretched over 10 hours). *Id.* at 53–54. And to the extent the ALJ attempted to discount the doctors' opinion on Plaintiff's ability to climb stairs with evidence of Plaintiff climbing stairs on a bus, Plaintiff's ability to climb a few steps on a bus need not be inconsistent with a total inability to climb a flight of stairs. *See id.* at 22. Like *Wilson*, the ALJ erred by failing to take into account key facts of Plaintiff's testimony (the 6-hour break in between shifts and the infrequency with which Plaintiff stood on the job) in using Plaintiff's testimony to discount a treating source opinion. *See Wilson*, 213 F. Supp. 3d at 485. And like in *Roden*, the Commissioner here asserted there was an inconsistency between the treating source opinion (that Plaintiff could not stand for more than 2 hours in an 8-hour workday) and the rest of the record, but the record does not reflect any such inconsistency. *See Roden*, 389 F. Supp. 3d at 554.

In sum, the Commissioner has failed to "give good reasons" for why the opinions from Drs. Key and Tarter, treating source doctors, should be discounted. The Commissioner wholly failed to address Dr. Tarter's January 24, 2017 opinion on Plaintiff's ability to climb stairs, supported by the later opinion of both Drs. Tarter and Key on this issue. [R. 15, pp. 423, 499] Further, the ALJ did not accurately characterize the evidence used to support her assertion that Drs. Key and Tarter's opinion that Plaintiff could not stand for more than 2 hours in an 8-hour workday is "not supported by the record." *Id.* at 23. This case is not the "rare case" where the ALJ met the "goal" of § 404.1527 if not the letter. *Thaxton*, 815 F. App'x at 960 (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006)).

The Court reviewed the remainder of Plaintiff's Objections to the Corrected Report and Recommendation, and generally finds them unpersuasive. Nevertheless, because the Court is

remanding this matter for the ALJ to consider the opinions of Plaintiff's treating physicians, the Court will require the ALJ to address the remainder of Plaintiff's Objections on remand.

## IV.     Conclusion

Based on the Court's review of the Commissioner's decision, the Court cannot find that it is made in accordance with proper legal standards. *Cole*, 661 F.3d at 940. The Court will reverse and remand the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 101 (1991) (explaining where the Commissioner "has failed to provide a full and fair hearing, to make explicit findings, or to have correctly [applied] the law and regulations" a district court may reverse and remand under sentence four of § 405(g)).

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1.     The Magistrate Judge's Corrected Report and Recommendation **[R. 21]** is **REVERSED in part**.

2.     Plaintiff Shirley Martin's Objections to the Report and Recommendation [**R. 24**] are **SUSTAINED IN PART.**

3.     The decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

4.     A judgment will be entered contemporaneously with this Order.

This the 8th day of September, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY